# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6067 | **DATE** | 8/17/2011 |
| **CASE TITLE** | Rosario et al. v. City of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

Motion by Defendants for summary judgment on Count V of the Complaint [39] is denied.

■[ For further details see text below.]  Docketing to mail notices.

# STATEMENT

Plaintiffs Ramonita Rosario ("Rosario"), and her mother, Maritza Figueroa ("Figueroa"), sued the City of Chicago and two of its police officers -- Michael Cosentino ("Cosentino") and Rosemary Accardo ("Accardo") -- in connection with their arrest on May 21, 2009. Plaintiffs allege that during the incident, Accardo told Rosario, "if you move, I will shoot you. Shoot you. Kill you," and that Cosentino grabbed Rosario by the ponytail, pulled her up from the curb, and put her in the squad car. According to the complaint, Cosentino then arrested Figueroa and fabricated a story to justify the arrest. In particular, his report falsely stated that Figueroa jumped on his back, and pushed and scratched him. Plaintiffs claim that Cosentino made a point of letting Figueroa know that he was concocting the story, taunting her by asking himself aloud as he wrote his report, "What am I gonna put on this report? Did she scratch me? Did she bite me? Oh, yeah, I'm gonna say she even jumped on me."

Defendants have moved for summary judgment with respect to Count V of plaintiffs' complaint, which asserts a claim for intentional infliction of emotional distress ("IIED"). Although initially asserted by both plaintiffs, Rosario's IIED claim has since been dropped. Hence, defendants' motion concerns only whether summary judgment is appropriate as to Figueroa's IIED claim.

"Summary judgment is appropriate when the pleadings and submissions in the record indicate the absence of any genuine issues of material fact, so that the moving parties are entitled to judgment as a matter of law." *U.S.*

*ex rel. Yannacopoulos v. General Dynamics*, --- F.3d ---- (7th Cir. 2011). The party opposing summary judgment "is entitled to the benefit of any reasonable inferences in his favor that are supported by the record." *Id.* "To establish a[ claim for] intentional infliction of emotional distress in Illinois, a plaintiff must prove that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No. 1*, 143 F.3d 351, 358-59 (7th Cir. 1998) (quotation marks omitted).

Defendants' motion focuses solely on the last of these elements. They maintain that Figueroa's "emotional distress was not severe and never rose past nervousness and annoyance at best." Reply at 2. I disagree. Viewed in the light most favorable to Figueroa, the record indicates that after the May 21, 2009 incident, "all [she] did was cry." Figueroa also "vomited a lot" and felt nervous. On the Monday following the incident, she sought treatment from Dr. Zahurul Huq, who prescribed Xanax for Figueroa's anxiety and Metoprolol for high blood pressure. About five months later, Figueroa was treated by Dr. Natu Patel, who renewed the prescriptions for Xanax and Metoprolol. Figueroa missed six or seven days of work due to her anxiety. Ultimately, her anxiety caused her to resign altogether from her job as a medical secretary. Figueroa still cries and experiences anxiety in connection with the incident. As of January 2011, she continued to take Xanax and Metoprolol.

Defendants point to several pieces of evidence in support of their claim that Figueroa's emotional distress lacked the requisite severity. For example, they observe that Figueroa never sought treatment from a psychiatrist or psychologist, and that she has offered no expert testimony to substantiate her claims regarding the severity of her distress. These observations do not carry defendants very far, however, for IIED claims under Illinois do not require that a plaintiff seek professional help. *See, e.g., Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006). Nor is it even necessary for a plaintiff to show that she experienced a physical reaction to the defendant's conduct. *See, e.g., Bristow v. Drake Street Inc.*, 41 F.3d 345, 350 (7th Cir. 1994).

The evidence on which defendants place the most weight comes from Dr. Patel. In particular, they cite his testimony that he did not consider Figueroa's nervousness to be severe. In his deposition, he acknowledged that if he had considered Figueroa's nervousness to be severe, he would have referred her to a psychiatrist. Instead, however, he prescribed Xanax. Further, defendants cite evidence that "in the six or so times that Mrs. Figueroa saw Dr. Patel over the last two years, she complained of nervousness only twice." Additionally, Dr. Patel testified that when Figueroa saw him on October 27, 2009, she told him that she had been experiencing nervousness for only three days. Defendants also point to evidence suggesting that Figueroa's vomiting may have been the result of gastritis, and that Figueroa had suffered from nervousness and high blood pressure prior to the May 21, 2009 incident.

| **STATEMENT** |
|---|

    When viewed as a whole, however, the record does not warrant summary judgment in defendants' favor. For example, while Dr. Patel did not consider Figueroa's distress to be severe, he nonetheless prescribed anti-anxiety medication for her (albeit at a mild dose). Moreover, given that Dr. Patel is not a psychiatrist or psychologist, and given that he did not see Figueroa until months after the incident, it is not clear that he was in the best position to accurately assess her condition. As for defendants' claim that on October 27, 2009, Figueroa complained to Dr. Patel of having felt nervous for only three days, Figueroa notes that she also complained at that time of experiencing stress for the past two to three months. Evidence that Figueroa suffered from preexisting hypertension and anxiety is similarly less than compelling. The record suggests that the previous bout of anxiety occurred four or five years earlier, and lasted only for a period of four days; and even if Figueroa previously suffered from these conditions, a jury could find that the May 21 encounter aggravated them. *See, e.g.*, *Treece v. City of Naperville*, No. 94 C 5548, 1998 WL 142391, at *14 (N.D. Ill. Mar. 25, 1998) (defendant may be held liable for IIED where plaintiff has a pre-existing condition or susceptibility to emotional distress).

    In short, on the basis of this record, a jury could reasonably find that Figueroa suffered extreme emotional distress as a result of the defendants' alleged conduct. Accordingly, the motion for summary judgment is denied.